Good afternoon. My name is Vadim Izetkoski and I represent the petitioner in this matter. This matter is based on an ineffective assistance of counsel claim. That's what we alleged at the board, that's what we alleged in our opening brief, and that's what we alleged today. The first mistake made by the petitioner's first attorney was taking the claim in the first place. He was admitted in December of 1997 and he took on this very complicated case in January of 1998. That alone doesn't mean he committed malpractice. But then he proceeded to file the I-130 and the I-485 with the district director, even though the petitioner had his case on appeal and the I-130 had to be filed specifically at the I-130 unit based on the high and initial fraud in marriages that are post-proceedings. The I-130 and the I-485 were never adjudicated and were eventually dismissed for, the I-485 was dismissed for lack of jurisdiction. After I took over the case, I took the I-130 and I had it brought down to the second floor of 300 North Los Angeles, where the I-130 unit properly reviewed it, interviewed the petitioner, and approved his I-130. Counsel, did I – I'm sorry, I must have missed something. Did you comply with the board's rules in matter of Lozada? You're saying this is an ineffective assistance of counsel case, but I didn't see that anywhere in the briefing. That's a good point, Judge. I didn't file a bar complaint. I did – I based it based on Castillo-Perez, where the requirements of Lozada are not sacrosanct. I have a big stamp on the record of proceedings, I believe it's page 7, where it says the 485 jurisdiction with ERIR. So it's obvious that the I-485, and which was the whole adjustment package, was filed with the district director when it should have been filed. First, the I-130 should have been filed at the I-130 unit, and if that was approved, the case should have gone back to the judge. Well, I guess the question that raises for me procedurally is we're essentially here in reviewing, I believe, on an abuse of discretion standard, the board's refusal to reopen. And while certainly the conduct of counsel is relevant to that, in the absence of compliance with the board's rules, why should we rule as a matter of law that this constitutes an abuse of discretion on behalf of the board? I will explain. Basically, even under dissent finding in INS versus Ventura, we have complied. The board, we have raised this issue, and the board simply said, you didn't leave, that's all that matters. The board didn't consider why the petitioner didn't leave. The petitioner didn't leave because he was told he didn't have to. That prior attorney told him he was eligible to apply for adjustment of status, he filed his application, he got him a work permit, and he never left. The court has previously ruled in Itaburia versus INS that the numerical limitations and the time can be told for ineffective assist of counsel. These arguments would all apply. The board did an incomplete review of the case. It basically went halfway. In VRT v. INS, the board has to consider all relevant factors. Here the board said, you didn't leave, too bad, that's as far as we take it. But there were so many other issues to decide. The board should have considered why he didn't leave. It was clear that he didn't leave because the prior attorney told him he didn't have to. Where is that in the record? I'm sorry? Where is that in the record? Which particular portion? That he didn't leave because he was so told by the prior attorney. I understand that the prior attorney filed him in the wrong place, but where does it say that the attorney told him they didn't have to leave? That is nowhere specific in the record, but that is just a logical argument to make because the Respondent paid $1,280 to the INS. He paid his prior attorney. Why would he – he received a work permit. Why would he possibly do all these things if he was told he was ineligible? If the attorney told me, sir, you're ineligible, you can leave the country, and six months to a year you can reenter with your green card, why would I do this? Why would a seven years down the line endure this? And it doesn't – Why don't you like the panel opinion? I do. That is my alternative argument. Oh, thank you. I like the panel opinion just fine, but I started with this point in the panel argument, and I – I used to play second fiddle in junior high school bands, so orchestra, so it doesn't bother me. Basically, that's our point. Why would the Respondent apply if he was told he was ineligible? It was clearly the prior attorney told him, pay $1,280. He paid the $1,280. He received his work permit. He applied. Why would he deal with that if he was told he was ineligible? Just leave the country, wait six months, and come back. It would have been 110 percent easier than going through what he has gone through. Believe me. Why didn't you file a bar complaint? Because the record was on its – because Castillo-Perez basically said, you don't need to file a bar complaint if it's clear. I'm not talking about for immigration law purposes. You started your argument today by telling us what a terrible error this early attorney made. It may be, at the end of the day, that if there was an error of the proportion you described, the results are pretty catastrophic for your client, right? The results absolutely were catastrophic for my client. Then why not file a complaint with the bar? You know, we have a terrible problem in this circuit with inadequately represented immigration petitioners, all the way from notarios to lawyers who simply don't know what they're doing, and you don't aid the process by not doing anything. Forget the board requirements for the moment. Don't you think you have a responsibility to do that? I wrote a letter to the prior attorney. He didn't respond. But I will – I don't want to go off on a tangent, but my problem with Lozada is that Lozada is abused. If you don't win your immigration case, you are in danger of having a bar complaint filed against you, whether it's a trial strategy, whether it's anything else. If you don't win, you're in danger of having a bar complaint filed, and they're filed based on an envelope being torn, based on the witness not being called, based on a country condition not being entered, even when those facts aren't at issue. Everyone files bar complaints against everyone else. That's why this is the toughest area of law, in my opinion, in practice. I don't like Lozada, and I'll be honest with you, I like Castillo-Perez, because when the record is on its face clear that the Respondent has been harmed by an effective assist of counsel, you don't have to file a bar complaint. So I understand your position here today. The reason you didn't comply with Lozada was you don't like the decision? I – no. I didn't comply with Lozada because Castillo-Perez, which was subsequent to Lozada, says you don't have to adhere to the strict requirements of Lozada. You know, I'm not sure Castillo-Perez will get you as far as you'd like to go. My recollection of Castillo-Perez is that the lawyer, the second lawyer, tried extremely hard to comply, requesting over and over again the documents from the earlier lawyer, making a complaint and so on. He had not complied with all of the requirements, but it was not for want of trying, and under those circumstances, we held that he did not have to comply with every detail of it. What did you do to try to comply with Lozada? I submitted a declaration from the respondent. I submitted my own arguments. I wrote a letter to the respondent's previous attorney, and it wasn't responsive. The only thing I didn't do, which was a requirement of Lozada, I did not file a bar complaint. And I felt I didn't have to do that because the record was clear on its face that the previous attorney had done the wrong thing. Did you tell the BIA that the reason your client didn't leave on the extended voluntary departure date was because of bad advice of his first lawyer? I don't believe I made that argument. But it was its – I'm not asking you whether you made the argument. Right. Did you even tell the Board that? I don't think I mentioned that in my briefing. I basically – You didn't mention it in the brief here, either, actually. Well, to me, it's a logical reasoning of why he didn't leave, because he was told he could apply. Because that's the only link. Otherwise, I don't even know where that gets you, because it might, but it would be an interesting and novel theory, that the bar doesn't apply because of ineffective assistance. But that argument hasn't been spun out anywhere here, has it? I don't believe I've raised it previously. Basically, to me, it's a reasonable conclusion that he didn't leave because he was told he was eligible to apply. Suppose that was true. How do you then hook that up to the fact that the bar appears to be, without exception, there doesn't seem to be an exception to the bar for – The five-year bar? Yes. Is there any case which has held that ineffective assistance – The only case I can think of on the subject is that Itaburia v. INS, the Court has told the numerical and the temporal limitations for ineffective system counsel. It, to me, would be a logical step. That's not what this is. No. No. That was a little – that was the only thing I – This would be tolling a statutory substantive requirement, not a procedural requirement. Correct. Basically, there are other issues that should be raised. The prior attorney filed – which I did raise – was that the prior attorney filed the whole adjustment package, including the I-130, with the district director. And I believe he did it in April of 1998. If the I-130 was filed in the right place, the I-130 could have approved it, and he could have remanded before the BIA decision was even made. See, by filing it in the wrong place – But wasn't he already barred for not having left? No. This was before the original BIA decision was made. This was – the original BIA decision was in April of 1998. The respondent was filed for adjustment of status in January of 1998, about three months before. If the attorney had done it right in the first place and filed the I-130 in the correct place, he could have had an approval and could have remanded the case before the BIA even made the decision in the first place. And that was raised and that was argued. Basically – and that's what argument is. Basically, there is equitable tolling and that the Board did not consider all the relevant factors. And even under the SENT approach in INS v. Ventura, there's an issue to be dealt with that the Board and the case should be remanded. In the alternative, we like the majority panel decision because the five years have passed and he's no longer barred. Can I press you on that one? Obviously, the question is going to be – or should be asked. It's in the heads of, I think, many people here. Well, that's not really the question, the five years have passed. And therefore, the question is, was it an abusive discretion for the Board at the time it acted to have refused to reopen when the five years had not passed? It was an abusive discretion based on the ineffective sense of counsel issue. Based on the five-year issue, it wasn't because the issue wasn't moved. It wasn't right yet. He didn't have the five years at the time the Board made its decision. But if the Board doesn't know that at the time that it acts, how can it be an abusive discretion? The five-year issue was not an abusive discretion because it was not raised at the Board. It was – he didn't even have the five years. That's not my question. My question is, if you didn't say to the Board of Immigration Appeals, the reason that my client didn't leave was because of his reliance on his counsel's advice that he could apply for adjustment of status, then how does that – why should that influence our analysis of abusive discretion? If the Board doesn't know about it, how can we declare that it's an abusive discretion? Well, because we did raise the ineffective assistance of counsel argument, and we did state all the things that the prior attorney did, that he filed it in the wrong place, and I believe that should be sufficient as far as the Board in considering why he didn't leave. Why would the Board even consider that question? They knew he didn't leave. They knew under what they thought were the operative rules, that barred any relief. Is there a reason it should go on – the Board should be expected to go on and entertain that question itself, that is, draw the inferences that you say you put in front of them? That might explain why he had misfiled – or why the – why the paper was misfiled in the first place, but would that necessarily tell the Board that this is also a reason why he should disregard the failure to depart? Well, that's a good question, Judge. I didn't raise that, and the argument we raised at the Board was that the – enough inadequacies by the previous attorney, the filing of the I-130 in the wrong place is the reason it wasn't approved before the appeal was dismissed. And then further, the previous attorney didn't seek an extension of voluntary departure. He could have asked the district director for an extension, and he could have applied to a Ninth Circuit, and that would have stayed voluntary departure. He didn't either. And basically, if he did one of those two things and filed the I-130 in the right place, this case would have never been here, and that's the issue we raised at the Board. And the logical step is he didn't – my client didn't leave because – Well, did you raise the second part with the Board? For example, you say the Fire Council failed to apply for an extension of time on the departure time. Correct. Was that raised with the Board? Correct, it was. I don't believe I have anything further. I'm sorry. You said that – what was raised in front of the Board? Whether the previous attorney didn't raise – didn't seek an extension. He didn't seek it with the district director. He didn't file a Ninth Circuit appeal. He didn't do anything to stay the voluntary departure bar. And can you point to me where in the record you say that in front of the Board? I can look. If the Court would like, I can sit and then respond to that after. If you wish to reserve the rest of your time, you can. I'll reserve my time. Thank you. Thank you, Chief Judge Schroeder, and may it please the Court, my name is Jonathan Cohen and I represent the Attorney General, John Ashcroft. Your Honors, there are two reasons why this Court should affirm the decision below and not consider the lapse of the five-year bar. First, the Board did not abuse its discretion, and second, any consideration of the lapse of the five-year bar, even by way of remand, would be circumventing the Attorney General's regulations. Before I get into these issues, however, I'd like to point out that, from my point of view, the issue of ineffective assistance is not properly before the Court. As an initial matter, this Court granted on-bank review on only one question, and that question was about voluntary departure and the consequences of Mr. Bell's and Morrow's not departing. That was the only question on which this Court went. How do you know that? We ordinarily decide to take the case on bank. It was on the Ninth Circuit's website. That was the only question on which it was granted on there. Well, we operate differently from the Supreme Court, so when the on-bank panel takes the case, we take the entire case. So under our traditions, everything's on the table. Okay. And I'm more than happy and prepared to talk about that issue. Is there any other reason why you think that we would not be able to or should not breach the ineffective assistance of counsel plan? Yes, Your Honor. As a prudential matter, there are two other reasons. First, the panel didn't address the issue, and second, Mr. Bell and Morrow's attorney did not file any respectfully requested briefing on the issue of the five-year bar. Let me start back on a more fundamental question. Did opposing counsel raise the issue of ineffective assistance below to the agency? He did, but he did not make the same arguments he's making here. Okay. That's what I want to zero in on, if I may. Did he make the argument that the counsel should have requested an extension of the nine-circuit appeal in the record? No, Your Honor. That's not in the record. Okay. And did he make the argument that a nine-circuit appeal should have been filed early on? No, Your Honor. That's not in the record. So the argument that you concede was at least preserved below is that counsel  had done that, had filed the right form in the right place initially, what would have happened to this Petitioner? If I may, Your Honor, I'd like to challenge the premise. I say that his previous attorney did not file the form in the wrong place. As you notice, in Mr. Bell and Morrow's brief, he cites no authority for the proposition that the form was filed in the wrong place. Well, I thought that he got a letter from the district director saying he filed it in the wrong place after two years. No, Judge Berzon. On page 37 to page 38 of the record, that's the letter. But let me clarify. There are two forms that have to get filed when an alien seeks adjustment of status. There's the I-130 and the I-485. The 485 is what the alien files. That's the actual application for adjustment. The I-130 is what the qualifying relative, in this case the spouse, files. That's the visa petition. The two forms have different rules. The 485 had to be filed with the Executive Office of Immigration Review or EOIR because the alien was in proceedings. The I-130, however, did not have to get filed. In fact, it couldn't have been filed with the Executive Office of Immigration Review. So the problem is not that there wasn't a file formed in the wrong place, but he named it the wrong form. But, Your Honor, the I-485 could not have been adjudicated by the board. Under the board's rules at the time, in Ray Andrews, an I-485 that's filed without the approved visa petition has to get rejected out of hand. So even if the attorney had filed the 485 with EOIR, the Executive Office of Immigration Review, it would have been rejected out of hand under Andrews. There's nothing the previous attorney could have done. Thus, Mr. Belsenbauer cannot show prejudice on that. Well, I guess let me just make sure I understand your argument. If we're looking at what the previous lawyer did at the outset, before we get to this five-year question, was there anything different that a knowledgeable, smart, immigration savvy lawyer could have done at that time to make the outcome different for this individual? No, Your Honor. There's nothing he could have done. Again, the one mistake he made was filing the 485 with the district director instead of with EOIR, but that's of no consequence. There's nothing he could have done. Now, Petitioner's Counsel will get up here and say the I-130, which was filed with the district director, should have been filed with someone else at the INS, the I-130 unit he calls it. But there is no regulation saying that. In fact, the only regulation on point is 8 CFR 204.1e, and that simply requires filing at the service office having jurisdiction. The head of the service office is the district director. The district director does receive these filings, as he did in this case on page 56 of the record. There's nothing in the record, there's nothing in the law saying that the I-130 had to be filed with the I-130 unit instead of the district director. So the previous counsel did the right thing. Again, the only form he misfiled is the I-485, but under In re Andrews, there's nothing he could have done. Now, let me make sure that he marries an American citizen, he's entitled to adjustment of status at some point, he's under an order of voluntary departure, and you're saying there's nothing he could do? There's nothing he could do to do what? That is to say, I assume he's entitled to stay in this country at some point after some adjustment of status. Is that correct? It's only partially correct, Your Honor. For him to adjust his status, he has to get the board to do it. Once an alien is in proceedings before the Executive Office of Immigration Review, the Executive Office of Immigration Review is the only agency that can adjust his status. The INS, now DHS, cannot do it. In order for him to get the issue before the Executive Office of Immigration Review, he has to get it by way of motion to reopen. And in this case, he was beyond the time and number bars that the ---- Well, that was the second time, but not the first time. Actually, both, Your Honor. Why? Well, the time and number bars, it's a 30-day rule, and the board's ---- I thought it was a 90-day rule for motions to reopen. I'm sorry, Your Honor. It's a ---- it is a 90-day rule. You're correct, Your Honor. And why was he beyond the time? I misspoke, Your Honor. The first motion to reopen was within the time. Right. And it was rejected because the application wasn't filed with the petition. Right. I mean, that's the way you adjust the status under ---- and you can correct me if I'm I mean, those were viewed for a long time with, I guess, with some consideration for the adjustment of status. Right? That's correct. In fact, there was a presumption that if you were in, you would file for adjustment of status, and you filed that with a motion to reopen. The presumption was that the board must or should reopen. Right? If it looked ---- That's correct. That decision, Garcia, was overruled in In re Andrews. Right. This is the ---- I'm sorry. This is the response I should have given to Judge Berzheim. I misspoke earlier, and I apologize. He was not barred by the 90-day rule. The trouble with the first motion to reopen was that he did not have supporting documentation, but he couldn't have had supporting documentation because by that point, the I-130 was not approved. And under In re Andrews, which overruled Garcia, you have to have an approved I-130. So there's nothing that the first counsel ---- And he didn't have the I-130 because he'd filed it? In the wrong place? No, no. He filed it in the wrong place, Your Honor. Again, there's nothing in the record, nothing in the law. That's not because he filed it in the wrong place? No, he filed it in the right place. He filed the I-130 in the right place. He filed it in the right place. These things just take time, especially in large cities, to be adjudicated. So there's nothing the first counsel could have done, and that's why the first motion to reopen was denied. It didn't have the proper paperwork, but it couldn't have the proper paperwork because the I-130 was not yet approved. Well, let me pose, there's a 90-day time period on the motion to reopen. It takes time to get the paperwork processed. So what happens if you have a situation where the guy's watching the 90 days run out, it does run out, the paperwork's all been turned in to the right place, but it hasn't come back yet, what's he supposed to do? What he's supposed to do under the law is either one of two things. One, he has to find one of the exceptions for reopening. The main exception in this case would be getting the consent of INS, now DHS. Second, and this might sound harsh, but this is the original intent of the law, you have to leave the country and apply for an immigrant visa. That's how it's normally done. There's no right to stay here in the country and get relief while you're in the country. This is a matter of grace that's been extended. The original way of getting the relief is by leaving the country and then seeking the immigrant visa, and that's what you should have done in this case once you could not get the motion to reopen. Right, but if, for example, because the board denied, as I understand it, the board denied the motion to reopen without any response from the service, right? Yes, Your Honor. If the service has consented, as I understand the rules at that time, then the motion to reopen might have been granted. That's correct, Your Honor. So, in fact, there was an avenue available to him, but it was cut short by the board because the board did not get the response of the service, nor did the attorneys seek to get the stipulation from the service, right? That's correct. There was an avenue. I mean, you're saying it's totally foreclosed, but at least the way I look at it, the way that the cases were decided at the time, if I'm reading correctly, he had an avenue. It might not have been successful, but he didn't pursue it. That's correct. Now, he's not said that his lawyer was ineffective for not seeking the consent of the agency. I understand. But your argument was there was no prejudice because there's nothing he could have done. And I take issue with that a bit. I mean, I understand you're approaching it from a different angle. But there was – there were remedies available. In fact, the service did consent, if I'm reading the cases correctly, the board cases, a number of times, right? You could consent today and have it reopened, right? That's correct, Your Honor. There's no prejudice to the ineffectiveness of the claim following the I-130 in the wrong place. Perhaps one could say there conceivably is prejudice for not asking the INS, but I say there isn't because since then he has requested the joint motion and the Department of Homeland Security has since said, no, they're not going to do it. I'm sorry. Could you say that one more time? I missed it. Do you want to go back? I'm sorry, Judge Fletcher. He has since requested the joint motion and the Department of Homeland Security has declined the invitation to do so. I see. And they generally do in cases like this when ailing fails to depart voluntarily because they don't want to reward people who fail to depart and they don't want to encourage others to depart. Right. But what I'm talking about is an earlier time period in which, in fact, the routine practice was, was starting with Garcia. In fact, there was a presumption that was changed later. But with Garcia in those cases, there actually was a presumption that you ought to reopen and just you had to show prima facie evidence that you were, you know, legitimate, the marriage was legitimate. But there was not a requirement that the adjustment be done, which, of course, is mostly impossible because of the time periods involved. Right. So we're talking about a different era where consents were a little more frequently given, I think. Well, no, Your Honor. After. This is 1992. 1992. Correct. I thought it was. I didn't think it was Andrews. I thought it was. Wasn't it Arthur that reversed? Arthur. Yeah. I'm sorry. It is Arthur. I didn't know what case you're talking about. I was confused also. Even Arthur talks about some exceptions to this. Well. And Arthur then, of course, was subsequently reversed, right? I mean, you modify the canon. In 2002, of course, we can't hold an attorney responsible in 1998 for not predicting the change of law in 2002. He was operating under Arthur in 1998 when this case was before him, and he knew there was nothing he could have done in terms of filing the 485. Filing 485 in front of Eeyore would not have helped him because the I-130 was not yet approved. And as for seeking the joint motion from DHS, then INS, there's actually a tougher standard back then. Back then, INS would join only with extraordinary circumstances. Now it's discretionary if the previous relief is not previously available, and now it is available. Is there any question in this case about the validity of the marriage from your perspective? There's nothing in the record on that. The board never reached that issue, so I can't comment. Could we, just in case it becomes relevant, go to the issue that you thought we were going to decide, which is the five-year issue, and whether the panel's original approach has any merit to it? Sure, Your Honor. I would say there are two reasons why this Court should not follow the panel's approach. The first is that the standard of review is abuse of discretion, and that's really the only issue. And the second is any consideration of the five-year bar, even by way of remand, would be circumventing the regulations that Attorney General Reno promulgated in 1996. First, with respect to abuse of discretion, there's no contention here that the standard is something other than abuse of discretion. There are no circumstances in which the Court can simply say we're not granting or denying this petition. We are simply vacating the order and asking you to take another look at it, which is what I basically understood the original panel to have said. Is there anything the APA seems to contemplate such a procedure? Is there any reason why such a procedure isn't available under the INA in general? Yes. The INA in this regard displaces the APA. The INA and the regulations that are promulgated in Motions to Reopen, and this Court recognized that. In CETA, which was a decision that Judge Pragerson penned in 1986, there the exact same issue was brought. Except for one major thing, which is that at that point you could freely file Motions to Reopen, and now you can't, right? Yes. I think actually that works in the government's favor, Judge Bergeron, with respect, because that underscores the significance of the regulations that are in effect. Back then there was value in following the regulations. Here there's added value because Judge Reno recognized, Attorney General Reno recognized that there's a value in finality, a strong public interest in finality, and for that reason she promulgated these time and number bars, and those time and number bars would be circumvented if this Court used the sort of backdoor channel of a remand. So I'd say CETA makes this case the a forciari case because now there's a stronger interest in preserving the regulations, the strong public interest in finality. So you're saying that because of the reopening limitations, which are limitations on the authority of the Petitioner to file, to ask the agency to do something, that affects our ability to act in relationship to the administrative agency in the way that courts ordinarily can react with regard to the administrative agency, i.e., the Petitioner. Is that correct, Your Honor? That's correct, Your Honor. It limits the relief the alien can have. It limits the circumstances in which he can present new evidence to the agency, and for that reason it also limits this Court. But one thing that troubled me is that in Ventura and in this Court's Lopez decision, in both instances, in a somewhat different situation, it was the Petitioner that was given as a reason for a remand. One reason for the remand was that time had passed, the circumstances might be different, and the agency may want to have new evidence on the new circumstances. How is that in terms of if you're really going to have a hard rule that we can only look that the record closes as of the Board's decision, how do Ventura and Lopez make sense in that regard? I think they make sense, Your Honor, because we're talking about here is a change of facts, a change of factual circumstances. And the motion to reopen regulation squarely addressed that issue. We're not dealing with a change of law, but a change of facts. And the motion to reopen reg specified if you want to present those new facts, you have to do so through the motion to reopen. What I'm saying is that that shouldn't be a one-way ratchet. In Ventura and in Lopez, it was the government's interest in accounting for the passage of time, i.e., that it had been five years and that the country conditions may have been different. That was at least one reason, although not the only reason, given for why a remand made sense because the agency could then look at additional facts. So why does that only run in one direction? I wouldn't say it runs in one direction. For example, if it came to our attention that Mr. Belsmore got divorced, that's a new factual circumstance. I'm sorry. I didn't hear what you said. If it came to our attention, for example, that Mr. Belsmore got divorced. I'm not saying he did. I just don't know. But if it did, we'd have to be bound by the same procedures for reopening. New factual questions can only be presented through a motion to reopen. It's different in a case in which there are two issues, one which the board addressed, one which it didn't get to because it did not have relief on ground number one. If this Court reverses ground number one, ground number two has not been addressed. That should be remanded under Ventura. But when it's remanded under Ventura, is the record then reopened to account for the time period that has elapsed in the meanwhile? That's what both Ventura and Lopez seem to contemplate. And that is at least in part what I understand the resistance is here, that the time that has elapsed in the meanwhile is not relevant time. And I'm asking, in those two cases, it seemed to be relevant time. Well, to answer the question, the board would have discretion to remand to the IHA to hold a further evidentiary hearing on that. But that's not the circumstance you have here. Again, and that's sort of the hypothetical we're talking about. You have two issues, one which the board addressed, one which it didn't address. And Ventura says the board has to have first crack at that second issue, which it never addressed. And if it has to remand to get facts on the second issue, it has to be remanded. So the board has to take into account the elapsed time, the time since the first board decision while it was pending before the Court. That's correct, Your Honor. But that's the time period we're talking about here with regard to the five years. That's correct, Your Honor. And yet it was improper for the panel to take that, to ask the board to take that time into account here. Correct, Your Honor, because the board in this case addressed the very issue that the Court is reviewing, whether Mr. Bell's morrow is eligible for relief. That's different from the Ventura hypothetical where you have two issues, one which the board never addressed, and the Court has to remand for the board to have an opportunity to address that issue. Here the board addressed the issue, and there's no question it addressed it correctly. And the only issue is, well, there are new factual circumstances that have arisen since then. But the whole point of motions to reopen is to address new factual circumstances, and Attorney General Reno decided that there has to be an end to this. At some point, we just can't have more motions to reopen. And that's the problem that Mr. Bell's morrow is facing, quite honestly. It's not the five-year bar anymore. It's the fact that he's running up against the time and number limitations. He's beyond 90 days. Those rules apply to all aliens. But that's not the reason the board gave for its decision. The reason the board gave for its decision was the five-year bar. Correct, Your Honor. The board's decision was the five-year bar. I see what you're saying. Yes. Counsel, from your perspective, was the issue of the running of the five years fairly raised in the party's briefing to the panel? I would say not, Your Honor. I would say that he waived that issue because he didn't raise it in his briefs. Now, granted, in his opening brief, the five years had not yet passed, but he could have filed a reply brief, which he chose not to do so. He only briefed this issue when the panel ordered him to do so. The panel raised it sua sponte. So I would say it was inappropriate for the panel to have reached this issue, and that's another reason I suggest why this unbanned court should not reach the issue. Let me ask you about the board's final order. As I read it, they didn't reach the merits of the ineffective assistance of counsel claim, right? They just said the five-year voluntary departure issue trumps everything. Is that right? That's correct, Your Honor. So if we determine that the five-year departure was not a legal bar, we would have to, under the theory of Ventura, remand for its consideration of the merits of the ineffective assistance of counsel claim, right? I would say you would do that if, A, you think the issue is squarely raised, and, B, as you recognize, the board did not address it, and, C, a remand would not be futile. So as for 1, 2, and 3, 1, as I suggested, the issue is not properly before this Court. As for 2, I think the board's response actually does dispose of it. If you look at how Petitioner phrased the argument, he was talking about ineffective assistance that occurred after the first motion to reopen. He said, first, one of his points was that his counsel did not inform him that the first motion to reopen was denied. By that point, of course, the five-year bar was in play. And also he made the argument about the I-130, and as noted, there's nothing that he did before. Once the first motion to reopen was denied, once the I-130 was finally approved, by that point, the five-year bar was in effect. So I think the board's analysis is directly head-on. It's directly right. It disposes of the claim. But if this Court said no, if it wanted to, you know, reach the merits of the ineffectiveness claim. Well, we wouldn't get to the merits. We'd remand under Ventura theory if we said the five-year bar is not a legal bar to the board's consideration of an ineffective assistance of counsel claim, right? Unless, of course, it fell. Yeah. Unless we'd be futile. And I'd say it's definitely futile. But it's difficult for us to assess that. You've made some good points here. But without having a record or anyone decide that below, I suppose we could decide that in the first instance. But we certainly have to go through a lot of hoops to get there. Mr. Belsmore, of course, has the burden of proof. But he put nothing in the record. He put nothing in the record whatsoever that the attorney made any mistake by filing with the district director. He didn't even cite any principle of law. He cites no authority whatsoever. There's nothing in the record. He cited nothing to the board, nothing here. There's nothing for this Court to go on. For those reasons, I would say this Court, if it reaches the merits, which it shouldn't, it should hold that it would be futile. And the regulation, again, is pretty clear. I'd say 8 CFR 204.1e. And that's what the previous counsel did. He filed in the service office having jurisdiction. Let me ask you a question about Arthur. Do you read Arthur as saying that there was no discretion at all for the board to exercise a motion or to grant a motion to reopen under these circumstances? Yes. And I promise to call it Arthur this time and not Andrews. At least I thought I wasn't crazy that I missed Andrews. No. I'm the one who's crazy, or at least lacking sleep. Yes. Did you say Arthur allowed no discretion? The I-130 is not yet approved. That's the end of it. Wasn't that part of the basis for the second motion to reopen, if it was the second motion to reopen, if the law had changed in the meanwhile on that issue? That's correct, Your Honor. But, of course, that law changed not occurring until 2002. And I'll try to pronounce this name correctly. It's harder than Arthur. But it's Velarde-Pacheco. That occurred in 2002, which was years after the decision we're talking about, four years after the previous attorneys alleged ineffectiveness. And we can't expect attorneys to have a crystal ball. Well, that's certainly true. But the question is whether it's independently a ground for a reopening. No, it's not, Your Honor, because the first motion was properly denied. The second motion was properly denied. He actually didn't understand you can't reach that because he didn't file a petition for review of the first motion to reopen. He filed only a petition for review of the second motion. But oddly enough, this is one thing I didn't really understand very well. The Board did not deny the second motion on the ground that it was the second motion. That was an alternative ground that it should have but didn't make it. But it wasn't. So for our purposes, it's not there, right? It's still another motion. Whether it's bound by the time a number bars, the Board has to respond to discretion to waive it. Right. So for present purposes, don't we have to assume that the second petition, second motion was for one reason or another, perhaps because there was an IAC underlying it, not barred for that reason? Because if the Board wouldn't go – if we were to remand the Board, it was now to decide that it was barred, that would be another thing. But so far it hasn't decided that. Well, it has not applied the time a number bars. But it's still the second motion. And under Stone, you still have to file separate petitions for review on the two motions. No, I understand that part. But we can't assume that the second – you've said various times the second one was out of time or duplicative. But really, that's not our problem at this point. Correct. The time a number bars are not at issue here because the Board did not apply them. The basis for denying the second motion is that the five-year bar had not yet elapsed. And because of the five-year bar, Mr. Balsamoro was not eligible to adjust the status. Now, at the time he applied for the – filed the motion to reopen, I guess the matter of LOG was still – was in play, right? I mean, that's what – at least in the concurring opinion in Filarity-Pacheco, it said, well, we've always held that you can establish prima facie eligibility under the clear and convincing standard without ruling on the petition itself, it seems to say. That was the concurring opinion. Do you agree with that? No. I think Arthur is very clear on his face that the I-130 is not approved. Right. So what do you make of this statement that the matter of LOG said you can submit documents and show prima facie eligibility by clear and convincing evidence and still make the standard without showing that the status had been adjusted? I would say that's – that, you know, the clear and convincing test comes into play only if there's an I-130 that's approved. To the extent of suggesting that the clear and convincing evidence standard was in play, even without the I-130, I'd say it's wrong under the clear language of In re Arthur. It says the board historically has not required a conclusive showing of this, assuming the facts alleged to be true. I mean, when I read all of this, I thought, well, if you take Arthur alone, I can credit your argument, but as I look at the historical development that's developed later in the later cases, it appears that there's a separate line of cases that says, well, you can establish prima facie eligibility in a different way. And here, he did establish prima facie eligibility with the documents, but not the I-130. I grant you what Arthur says. I mean, at the very least, I don't think you can say, well, first of all, Petitioner's current counsel has not made this point, but second of all, even if you could say there's some possible ambiguity in the law and maybe Arthur had a loophole, I don't think it did, but if it did, you can't say that Petitioner's previous counsel was ineffective for not finding it. Honestly, I think this is the first time I've heard of that potential loophole, and we can't expect all previous counsel to be as bright as you, with all respect. I take it you're not, you are not hanging your hat on the Lozada requirement of the bar filing, are you, in this case? That was not the basis for the Board's decision. I do, however, agree with Judge Tallman that Petitioner has not complied with Lozada, so that would be another reason why a remand would be futile. I've never understood that particular requirement because we don't make it of habeas Petitioners. No one makes it except in these kinds of cases, and they are routinely rejected by bar associations because malpractice does not necessarily equate to ethical violations. So it's the odd position of saying we want to make sure you're serious, but to show you're serious, we're going to force you to file what many bar associations view as a frivolous complaint. I've never understood the requirement, nor would I subscribe to that, if we're sitting on Bach if we reached it. Well, a few reasons. For a few points. First, I would say it's not properly before this Court. Second of all, Petitioner has not suggested there should be a limiting of Lozada. He simply says he falls within the exceptions. That point has not been raised. And third of all, I'd say that there is value to that third prong because it actually shows the seriousness of the claim. If the current counsel is not willing to make a bar complaint, I think that undercuts his claim of ineffective assistance. And that's what you have here. I mean, current counsel got up here and said, oh, I don't like these requirements. I don't want to enforce it. I don't like it. Why wouldn't the same rule apply in habeas cases? We engage constitutional and effective assistance of counsel in habeas cases without this requirement. One could say perhaps it should, but of course the question here is whether this is a reasonable rule. If it is reasonable, then under Chevron, I'd say that we should affirm the Board's  position. But in any event, it's not an issue here. That's correct, Your Honor. Your time has expired. Thank you, Chief Judge Schroeder. First thing I would like to address and apologize to the Court. I did not find in the record where I did request, where I did state that the previous attorney should have sought an extension of the VR, either with the district director or by filing a Ninth Circuit. I did not find in the record, so I do apologize to the Court for my misstatement. Second of all, the I-130 is approved. So it is the district director has concluded it's a viable marriage. Proof and the last argument, the I-130 is in the wrong place. I have a receipt that the Respondent paid his $1,280, and in that receipt he paid for the work permit, he paid for the I-485, and he paid for the I-130. And they were all filed together and in the same place. And if the I-140, I-485 is in the wrong place, it does not make sense that the district director can adjudicate the I-130 without the I-485 being in the right place.  So the representation that was made, and I have no idea if it's correct, but it was very specific, is that the one form was supposed to go to the EOIR, but the other one could go to the district director. And that the reason why the one that went to the district director was bounced was because the other one had to be approved first. So it wasn't that that was filed in the wrong place. It's that it was essentially too early. Basically what, that's not completely correct. Essentially in Los Angeles, and I don't know about other cities, but I practice in Los Angeles, there's a special unit on the second floor of 300 North Los Angeles, and they handle all judge cases. Because of the high indicio fraud, the I-130 units, the I-130 unit handles all marriages that take place after the person is in proceedings. How that differs from regular adjustment interviews is they get a personal interview. They actually sequester the husband and sequester the wife. The I-130 that was filed in this case should have been filed at the I-130 unit. Since it was filed with the district director with the I-45, that office cannot approve an adjustment because they don't have jurisdiction, because the case is in court. It's in front of the immigration judge. That is the only person that can grant adjustment after the proceedings have commenced. So when was the I-130 approved? It was approved in August of 2000. After I went to the I-485 unit and spoke to their supervisor and said, hey, you don't have jurisdiction to this. Can you kick it down to the second floor? It was received. He was scheduled for an interview, and within four and a half months, I believe, he had an I-130 approval. Counsel, what's your response to opposing counsel's position that the issue regarding the running of the five years was forfeited in the briefing? Well, I couldn't have raised it at the board because it didn't have the five years. I couldn't have raised it at the opening brief because it wasn't the five years. What about the library? To be honest, it was something the court brought up sui sponte, which the court has authority to do. What's that authority? In the immigration appeal petition, what authority, what case authority does the panel have to raise an issue sui sponte? I don't have any specific, one specific case, but to me it's well known that the court can raise issues on its own sui sponte. In an administrative review? I believe so, Judge. Let me ask you this. If you were to lose in front of this panel and certiorari is denied and this becomes final, what options are then available to your client? The only thing I could think of is that he would be, he would have to leave the United States and try to apply from there and be subject to a 10-year bar. Ten years running from when? From, I believe, from the date he leaves, which would be after this panel makes a decision, if it's adverse to us, of course. Even though he has what has now been adjudicated four years ago as a valid marriage? Correct. The problem is that unless the panel remands, I can't reopen. That's the problem. Thank you very much. Any further questions? Thank you. The case has been submitted for decision. The court stands adjourned.
judges: Schroeder, Pregerson, Hawkins, Thomas, Silverman, Graber, W. Fletcher, Berzon, Tallman, Rawlinson, Clifton